UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMESHA FREDRICK,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST HORIZON NATIONAL<br>CORPORATION d/b/a FIRST<br>TENNESSEE BANK,<br><br>    Defendant. | Civil Action No. _____<br><br>JURY DEMAND |

**COMPLAINT-JURY DEMAND**

Plaintiff Jamesha Fredrick ("Plaintiff" or "Ms. Fredrick "), by and through counsel, for her Complaint against Defendant First Horizon National Corporation doing business as First Tennessee Bank, hereby states as follows:

**INTRODUCTION**

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation against Plaintiff because of her race and because she complained about unlawful discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the Tennessee Human Rights Act, T.C.A § 4-21-201, et seq., ("THRA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, as this action involves a federal question regarding the deprivation of Plaintiff's civil rights under 42 U.S.C.§ 1981. The Court has supplemental or pendent jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

4. Plaintiff has complied with all statutory prerequisites to filing this action. Plaintiff brings this action within statute of limitations for an action filed under 42 U.S.C. §1981 and T.C.A § 4-21-201, et seq., ("THRA").

## PARTIES

5. Plaintiff Jamesha Fredrick is an African American citizen who resides in the Eastern District of Tennessee. At all relevant times, Ms. Fredrick was a Bank employee and met the definition of an "employee" under all applicable statutes.

6. Defendant is a corporation authorized to conduct business in the State of Tennessee with its principle executive office located in Memphis, Tennessee. At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

## PROCEDURAL REQUIREMENTS

7. All prerequisites, if any, to the filing of this suit have been met. Plaintiff has timely filed this action.

## FACTUAL ALLEGATIONS

8. Jamesha Fredrick is an African American woman who worked for Defendant Bank for nearly twelve years. She began as a teller at a Chattanooga branch in February 2006 and later transferred to Nashville where she was promoted to operations manager in 2007 when she began selection of the applicant to fill vacant teller position.

9. Plaintiff received favorable evaluations and remained in the operations manager position until 2013 when she transferred back to Chattanooga to accept an operations manager position at the Southside branch, which was a "teller only" facility.

10. In April 2014, Plaintiff needed an experienced teller at the branch because she was doing the job of the operations manager performing deskside and teller duties and had no time available to train a new employee.

11. Plaintiff expressed to the branch manager Connie Taylor the need for an employee who could be trusted and was qualified to do the job.

12. In May 2014, Plaintiff selected an employee who had a good work ethic, fifteen years or more experience, and high level training as a teller with Defendant Bank, as compared with the other applicant who had less than a year of teller experience.

13. Defendant's branch manager advised Plaintiff that she was going to override her decision and hire the other applicant based upon the regional manager's comment that the African American applicant was "trouble."

14. Plaintiff had observed that Defendant appeared to deny African American applicants in the Chattanooga market advancement opportunities as compared to those of similarly situated white employees.

15. Based upon her observations and interaction with other bank employees in the Chattanooga market, Plaintiff became concerned that race was the motivating factor in denying the African American the teller position.

16. Defendant terminated the teller after the February/March 2015 audit revealed that she had been stealing money from the Bank.

17. During the audit review meeting, the retail support manager, Leighann Buckner, suggested that Plaintiff was failing at being an effective manager and blamed her for hiring the inexperienced teller who committed the theft.

18. Plaintiff reminded Ms. Buckner that she chose the more experienced applicant and that no one ever responded to her repeated requests for assistance needed because of the teller's lack of experience.

19. Defendant's branch manager Connie Taylor admitted to Ms. Buckner that it was her decision to hire the teller with lesser experience. As regional manager, Ms. Buckner made no comment concerning the branch manager's decision to hire the inexperienced teller who was a white female.

20. Near the end of the audit review meeting, Ms. Buckner mentioned that there was a vacant universal banker position and acknowledged that no employees wanted to transfer to the Eastgate branch. Defendant's Eastgate branch is located in the African American community.

21. After Plaintiff questioned the details of the vacant universal banker position, Ms. Buckner stated that someone would get back to her. Plaintiff received no information from Defendant about the universal banker position prior to receiving an email regarding an involuntary transfer to the Eastgate branch.

22. In April 2015 or approximately two weeks after the audit review meeting, Ms. Buckner sent an email to Plaintiff about her being transferred to the Eastgate branch even though she had made no request to be moved to a different location.

23. Upon the transfer of Plaintiff to the Eastgate branch, Defendant assigned a white female to perform Plaintiff's duties at the Southside branch. Defendant also transferred a financial service representative from the Eastgate branch.

24. Plaintiff believed that her African American race was a factor in the decision to transfer her to the Eastgate branch.

25. After denying African Americans advancement opportunities, Defendant would select lesser qualified Caucasians or whites to fill those positions.

26. Bank wrongfully and unjustly denied promotions and advancement opportunities to African Americans allegedly because they were not quite ready to move up and might be ready within three to five years.

27. Plaintiff observed that the operations manager was treating white bank customers more favorably than African American customers. Plaintiff reported the complaints to the branch manager who stated he would discuss the matter with the regional support manager, Connie Gilley.

28. Indeed, the Bank's failure and refusal to respond to Ms. Frederick's complaints provides compelling confirmation of the Bank's indifference to the unlawful conduct of its employees.

29. In July 2017, Plaintiff told the regional sales manager Connie Gilley that she wanted to schedule a meeting to discuss advancement at Eastgate since the bank manager of more than 40 years would be retiring.

30. The regional sales manager agreed to schedule a meeting to discuss Plaintiff's advancement at Eastgate and never did.

31. When Ms. Gilley hired an African American to fill the branch manager position Highway 158, she stated that she was hiring him against his better judgment. That employee transferred to another state where he could have an equal opportunity for advancement.

32. Despite repeated complaints about the discriminatory her conduct, Defendant's operation manager, Tammy Chambers, continued to act in a manner to favor white customers and treat African Americans negatively.

33. Defendant failed to seriously investigate or discipline the operations with respect to the complaints of discrimination, harassment and intimidation.

34. Indeed, the Bank's failure and refusal to respond to Ms. Frederick's complaints provides compelling confirmation of the Bank's indifference to the unlawful conduct of its employees.

35. After complaints to her supervisors, and the Ethics Hotline, defendant Bank failed to stop the discriminatory and harassing conduct.

36. In July 2017, Plaintiff told the regional sales manager Connie Gilley that she wanted to schedule a meeting to discuss advancement at Eastgate since the bank manager of more than 40 years would be retiring. The regional sales manager agreed to schedule a meeting to discuss Plaintiff's advancement at Eastgate and never did.

37. Defendant's August 17, 2017 write-up would prohibit Plaintiff's transfer to, or application for the branch manager position to which she expressed the desire to advance.

38. When Ms. Gilley hired an African American to fill the branch manager position at Highway 158, she stated that she was hiring him against his better judgment. That employee transferred to another state where he could have an equal opportunity for advancement.

39. Plaintiff expressed her concern to the branch manager, Ms. Taylor, about the involuntary transfer and that she could not to take the position because of the 11% pay cut. The branch manager responded that Plaintiff did not have a choice.

40. Plaintiff began losing sleep and having dreams about working at the Bank.

41. Even though Defendant subjected Plaintiff to an involuntary transfer with a significant pay cut, she satisfactorily performed the duties of the universal banker and continued to be a conscientious and reliable employee at the Eastgate branch.

42. In late 2016, Plaintiff discussed her request for a raise with Eastgate branch manager who agreed that she deserved one. The branch manager discussed Plaintiff's request for a raise with his regional sales manager. That regional sales manager commended Plaintiff on doing a great job and encouraged her to continue development of her skills for advancement to the branch manager position at Eastgate. He also encouraged her to get involved in the community as did the current branch manager expected to retire during his 45th year in 2018.

43. In February 2017, Defendant recognized Plaintiff as a top performer in the company for which she received an award at the annual Diamond Club event held in Arizona.

45. In June 2017, Plaintiff received a 5% raise as a result of the efforts of the regional sales manager. Shortly thereafter, Defendant terminated that regional sales manager and assigned Connie Gilley to fill that position for the Eastgate branch.

46. Ms. Fredrick discussed her desire for advancement with Ms. Gilley, the new regional sales manager, since the branch manager would be retiring the next year. Ms. Gilley stated that she would schedule a meeting to discuss advancement and never did.

47. On Friday, August 11, 2017, the operations manager Tammy Chambers left the bank early allegedly to meet with a lawyer at the downtown branch.

48. Upon Ms. Chamber's return, the regional sales manager instructed the African American branch manager to meet her at the downtown branch. Defendant's actions forced the African American branch manager to take an earlier retirement.

49. Plaintiff reported to work at the Eastgate branch on Saturday, August 12, 2017 and was surprised that the African American branch manager was not there. Instead, the regional sales manager told Plaintiff that her branch manager had retired the day before and the white male manager from the Highway 58 branch, and she, were there to "help out."

50. On Wednesday, July 16, 2017, Plaintiff contacted the ethics hotline to complain that African Americans felt like they were being discriminated against by Tammy Chambers and that she felt targeted because someone had searched her desk. She complained about Ms. Chambers' actions and how she talked negatively to the African American employees and customers.

51. On the following day August 17, 2017, after she complained to the ethics hotline, Defendant subjected Plaintiff to a write-up and suspension based upon false accusations including, but not limited to, dishonesty and unprofessional conduct.

52. The regional sales manager came to the Plaintiff's desk and instructed her to meet in the break room where the operations manager, Tammy Chambers, was waiting.

53. The regional sales manager discussed Plaintiff's opportunity for advancement and the current situation with retiring branch manager. The regional sales manager told Plaintiff that maybe in 3 to 5 years, she might be ready for a branch manager's position.

54. Relying on false information received from operations manager, Tammy Chambers, the regional sales manager handed Plaintiff a final written warning concerning "Quality of Work, Dishonesty, Unprofessional Conduct, Judgement/Decision Making, Violation of Company/Department Policy, Insubordination, Negligence/Carelessness."

55. The regional sales manager even stated that she would have handled one matter complained of in the same way that Plaintiff had. Defendant wrote Plaintiff up for handling matters in the same manner as similarly situated white employees who were not written up or disciplined.

56. After reading the final written warning, Plaintiff addressed each item and explained the reasons that the statements were not true. Thereafter, Tammy Chambers, the operations manager left the break room.

57. The regional sales manager discussed the situation and stated that Tammy came in "like a bat of hell." Defendant suspended Plaintiff for one day and told her not to discuss anything with the bank manager who had retired the prior week.

58. The regional sales manager instructed Plaintiff to return to the Bank after business hours for further discussion.

59. On August 17, 2017, Plaintiff became tearful and started trembling during the meeting. She became overwhelmed about a suspension being on her work record and feared Defendant would label her as a trouble maker to prohibit her advancement with the Bank, as done to other African American employees.

60. The regional sales manager changed the final written warning to a written warning after Plaintiff questioned the reason for the write-up to be classified as being a final warning when she had not been counseled on those matters.

61 Plaintiff in tears told Ms. Gilley that she could not sign the written warning because the allegations were false.

62. On or about August 17, 2017, Defendant created an intolerable work environment for Ms. Fredrick when it called her into a meeting, berated her job performance, made unfounded allegations against her including acts involving dishonesty and unprofessional conduct.

63. Plaintiff prepared a response to the false statements used to justify the write up and suspension and submitted it to the regional sales manager upon return to the Bank after business hours as instructed by Ms. Gilley.

64. Plaintiff advised the regional sales manager that the work environment had become very hostile causing her to fear working there any longer because of the false statements accusing her of dishonesty and unprofessional conduct after she complained to the hotline about discrimination.

65. Defendant deliberately discriminated against Plaintiff on the basis of her race to interfere with her advancement opportunity to the branch manager position. Even though Plaintiff was qualified for the branch manager position, Defendant hired a white male instead.

66. Race was a motivating factor in the Defendant's decision to constructively discharge the Plaintiff.

67. After Plaintiff's termination, customers continued to complain about the operations manager's treatment of African Americans. One complaint concerned Ms. Chamber's refusal to allow an African American the opportunity to use the bathroom, when another employee was getting ready to give her the key.

68. Plaintiff was the victim of intentional discrimination as Defendant deliberately intended to make working conditions intolerable to justify Plaintiff's conclusion that she had no option but to end her employment with the Bank.

69. In addition to other adverse employment actions, Defendant suspended and, in effect, constructively discharged Plaintiff on August 17, 2017,

70. Shortly after Defendant constructively discharged Plaintiff, Tammy Chambers stated that she was there to clean up Eastgate.

## FIRST CAUSE OF ACTION
## DISCRIMINATION AND HARASSMENT IN VIOLATION OF SECTION 1981

Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 70, inclusive, as if fully set forth herein.

71. Defendant discriminated against =and harassed Plaintiff on the basis of her race/color (African American) in violation of 42 U.S.C. §1981 by denying her the same terms and conditions of employment available to employees who are not African American including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an environment free of unlawful discrimination.

72. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of 42 U.S.C. §1981, Plaintiff has suffered and continue to suffer a loss of enjoyment of life, mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

73. Defendant's unlawful and discriminatory conduct in violation of 42 U.S.C. §1981 was malicious intended to injure Plaintiff, and done with conscious reckless disregard of her civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF SECTION 1981

Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 73 inclusive, as if fully set forth herein.

74. Defendant retaliated against Plaintiff in violation of 42 U.S.C. §1981 for opposing and/or complaining of Defendant's discriminatory practices against her and other employees at Defendant Bank, by subjecting Plaintiff to acts of discrimination, involuntary transfer, harassment and humiliation, and by causing adverse employment actions to be taken against her including, but not limited to, suspension and unjustified written warning filled with false statements.

75. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of 42 U.S.C. §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

76. Defendant's unlawful and retaliatory conduct in violation of 42 U.S.C. §1981 was outrageous and malicious, intended to injure Plaintiff, and done with a conscious and reckless disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRD CAUSE OF ACTION

## RACE DISCRIMINATION AND HARASSMENT
## IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT (THRA)

Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 76, inclusive, as if fully set forth herein.

77. Defendant discriminated against Plaintiff on the basis of her African American race in violation of the THRA by denying her the same terms and conditions of employment available to white employees including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful discrimination.

78. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the THRA, Plaintiff has suffered and continue to suffer fear, mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## RETALIATION IN VIOLATION OF THRA

Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 78, inclusive, as if fully set forth herein.

79. Defendant retaliated against Plaintiff in violation of the **THRA** for opposing and/or complaining of Defendant's discriminatory practices directed towards her and African American employees by, inter alia, subjecting Plaintiff to acts of

discrimination, harassment and humiliation, making false accusations concerning her job performance and subjecting her to written reprimand with threat of termination.

80. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the Tennessee Human Rights Act, Plaintiff has suffered and continues to suffer loss of enjoyment of life, mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, fear and anxiety, loss of self-esteem and self-confidence, tearfulness, emotional pain and suffering, for which she is entitled to an award compensatory and monetary damages and other relief.

### NEGLIGENT HIRING, RETENTION AND SUPERVISION

Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 80, inclusive, as if fully set forth herein.

81. Defendant has violated its duty as Plaintiff's employer to provide a safe workplace, to take reasonable steps to determine the fitness of Plaintiff's co-workers and supervisors and to reasonably supervise Plaintiff's co-workers and supervisors by failing and refusing to adequately investigate and/or take appropriate disciplinary or other action in response to Plaintiff's complaints of discriminatory and harassing conduct by her co-worker and/or supervisors on the basis of her race/color.

82. As a direct and proximate result of Defendant's breach of duty to supervise, Plaintiff has been injured and is entitled to an award of compensatory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Tennessee;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

D. An award of monetary damages, plus prejudgment interest, to compensate Plaintiff for back pay, front pay, any equitable relief and all monetary and/or economic harm;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

F. An award of damages in an amount up to $10,000,000 as compensation, plus prejudgment interest, to be awarded Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her loss of enjoyment of life, mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering,

emotional distress and physical injuries;

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages in the amount up to $10,000,000;

I. An award of costs that Plaintiff has incurred in this action, as well as her reasonable attorneys' fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

K. Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully Submitted,

Michelle M. Benjamin, BPR No. 12377
Attorney for Plaintiff
P. O. Box 177
Winchester, TN 37398
(931) 962-0006

## OATH

STATE OF TENNESSEE )
)
COUNTY OF FRANKLIN )

**JAMESHA FREDERICK** after being duly sworn as required by law, makes oath the facts set forth in the Complaint are true to the best of her knowledge, information and belief, and that the not made out of levity or by collusion with the defendant, but in sincerity and truth for the causes mentioned therein.

*Jamesha Fredrick*
**JAMESHA FREDRICK**

**NOTARY PUBLIC**

Personally appeared, sworn to and subscribed

before me this 15th day of August 2018.

*Laurie B. Graham*
Notary Public

My Commission Expires: 3-30-20